UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | | |
|---|---|---|---|
| DEBORAH PARKER, | ) | CASE NO.  5:12cv2552 | |
| | ) | | |
| PLAINTIFF, | ) | JUDGE SARA LIOI | |
| | ) | | |
| vs. | ) | | |
| | ) | MEMORANDUM OPINION AND | |
| | ) | ORDER | |
| STARK COUNTY HEALTH | ) | | |
| DEPARTMENT, et al., | ) | | |
| | ) | | |
| DEFENDANTS. | ) | | |

## I.  INTRODUCTION AND BACKGROUND

The events underlying this case center upon a parcel of land and a house thereon owned by Plaintiff *pro se* Deborah Parker in Canton, Ohio. The undisputed facts are as follows: On July 12, 2010, Deborah Moore, an employee of Defendant Stark County Health Department (the "Health Department"), conducted an inspection of the property and the home in response to a complaint about sanitary conditions on the premises. (In Re: Sanitary Conditions at 3439 Deuber Ave SW, Canton Township, Parcel 1310029, Def.s' Mot. to Dismiss Ex. A at 157.)[1] Ms. Moore found "an accumulation of garbage, solid waste and debris exterior to the sides and rear of the home" and that the home was "currently not secure because of [] broken windows," leading to "a raccoon infestation" and "visible animal waste accumulation" within the home, where "a portion of the ceiling ha[d] collapsed." (*Id.*) On behalf of the Health Department, Ms.

---

[1] All references to specific page numbers in the record refer to the continuous page numbering applied by the electronic docketing system.

Moore wrote a letter to Ms. Parker on July 15, 2010, informing Ms. Parker of the results of her investigation and calling for the issues observed to be corrected within fourteen days. (*Id.*)

When Ms. Moore re-inspected the property on September 19, 2010, she determined that the initial problems with the property had not been remedied, and, in addition, discovered that "[t]he water well cap ha[d] cracked and the water well [wa]s not protected against contamination." (Public Health Order, *Id.* at 124.) The Health Department issued a Public Health Order on October 22, 2010, giving Ms. Parker 30 days to fix the issues identified. (*Id.*) After the re-inspection, Ms. Moore concluded that "the home was not secure because of broken windows and solid waste remain[ed] on the property." (*Id.*)

After Ms. Parker failed to comply with the Public Health Order, the State of Ohio filed suit on behalf of the Board of Health of the Stark County Combined General Health District (the "Board of Health") in the Stark County Court of Common Pleas on February 7, 2011, seeking, among other things, a preliminary and permanent injunction prohibiting Ms. Parker from exacerbating the problems at the property and ordering her to correct them. (Verified Compl. for Prelim and Permanent Inj. Relief, *State ex. rel. Ferrero v. Parker*, No. 2011CV441 (Ohio Com. Pl. Mar. 7, 2011), *Id.* at 96.) On April 4, 2011, Ms. Parker filed a document *pro se* with the state court, styling herself as the Plaintiff, opposing the State's application for permanent injunction, and asserting numerous claims against the Board of Health, Canton Local Township (the "Township"), and Helen Walton, a neighbor living adjacent to the subject property. (Def.'s Countercls. and Cross-cls., *Id.* at 114.)

A hearing was held in state court on April 22, 2011, after which the court issued the injunction sought by the Board of Health and dismissed Ms. Parker's claims without

prejudice. (J. Entry of Apr. 26, 2011, *Id.* at 145.) Pursuant to entering judgment for the Board of Health, the court found the property to be a public health nuisance, specifically:

1. The home is damaged and not secure and has been vacant for approximately ten (10) years.

2. The home and garage are infested with raccoons and their waste.

3. There exists solid waste and construction and demolition debris on the premises, including carpeting, tires and garbage.

4. The water well requires a new well cap.

5. The structure has so deteriorated as to be uninhabitable.

(J. Entry of Mar. 30, 2011, *Id.* at 112.) The state judge gave Ms. Parker 120 days to abate the nuisance and ordered that if she failed to do so, the Canton Township Board of Trustees may abate the nuisance itself by, among other things, "razing the structure." (J. Entry of Apr. 26, 2011, *Id.* at 142–43.) Ms. Parker signed the order. (*Id.* at 144.)

On August 19, 2011, Ms. Parker moved for dismissal of the permanent injunction, claiming that she had abated the nuisance on her property. (Mot. to Dismiss Inj., *Id.* at 146.) The state opposed Ms. Parker's motion (Reply to Def.'s Mot to Dismiss Inj., *Id.* at 159), contending that she had not complied with the state court's order. The state court agreed and denied Parker's motion on September 8, 2011 (J. Entry Den. Def.'s Mot. to Dismiss Inj., *Id.* at 163).

Ms. Parker brought another motion to dismiss the injunction on September 16, 2011, again claiming to have taken the proper measures to abate the nuisance, as well as asserting that her constitutional rights were violated by Ms. Moore's trespassing on the premises and in the house to inspect and photograph the property. (Second Mot. to Dismiss Inj., *Id.* at 164–67.) Again, the State opposed the motion (Reply to Def.'s Second Mot to Dismiss Inj., *Id.* at

3

180), and the state court denied the motion on October 27, 2011 (J. Entry Den. Def.'s Second Mot. to Dismiss Inj., *Id.* at 199).

Almost immediately, on October 31, 2011, Ms. Parker brought a third motion to dismiss the injunction. (Mot. to Grant Dismissal of Prelim. Inj., Mot. for TRO Ex. A [Doc. No. 16–1] at 248.) According to the online case docket, of which the Court takes judicial notice, no filings or rulings in the state court case have occurred since this motion was filed, but the case status remains "open."

On October 12, 2012, Deborah Parker filed a complaint *pro se* in this Court (Doc. No. 1) against the Health Department, the Township, and the Stark County Regional Planning Commission (the "Commission") (collectively, the "Public Defendants"), along with Cottrill Wrecking Company ("Cottrill") and Helen Walton (the "Private Defendants"). The complaint contains the following title headings: "Complaint Violation of Fair Housing Act," "Criminal Trespassing 2911.21," "Stay on Permanent Injunction, and Lift Permanent Injunction on Grounds of Fraud, and Violation of Constitution Rights, Fourth Amendment Private Property Rights," "Abuse of Disabled Elderly Person," and "Restraining Order."

In the complaint, Ms. Parker purports to assert an array of federal and state claims, the precise contours of which are far from clear, but appear to include alleged violations of her rights under the Fourth and Fifth Amendments and allegations of racial discrimination, retaliation, trespass, property damage, intimidation, and intentional infliction of emotional distress.

Plaintiff's allegations appear to derive from the following alleged behavior:

1. The Health Department's inspection of the premises and subsequent activity seeking remediation of the conditions observed thereon, including

obtaining a permanent injunction declaring the property a public nuisance, ordering its abatement, and threatening to demolish the property after Plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC") (Compl. ¶¶ 3, 6–13, 23–35);

2.  The Township's removal of vehicles from Plaintiff's property (*Id.* at ¶¶ 3–4, 6, 12, 23, 29–35);

3.  The Commission's order to demolish the property and refusal to allow Plaintiff to apply for a grant to be used to repair her home (*Id.* at ¶¶ 5, 23, 29–35);

4.  A Cottrill employee's entrance onto the property without Plaintiff's consent (*Id.* at ¶ 5 ); and

5.  Helen Walton's trespassing upon the property, damaging the property, mistreating Plaintiff and her relatives, and lying to other Defendants and a Stark County Sheriff's Deputy about the ownership of the property (*Id.* at ¶¶ 13–23; 29–35)

On top of seeking $670,000 in alleged actual damages, Plaintiff asks this Court to "stay" and "lift" the permanent injunction entered against her by the Stark County Court of Common Pleas and to prevent "illegal and criminal trespassing" on her property.

On October 25, 2012, the Public Defendants filed a motion to dismiss, asserting that this Court lacks jurisdiction under the *Rooker-Feldman* doctrine and that Plaintiff has failed to state a federal claim. (Doc. No. 10.)[2] Ms. Parker filed a motion to deny the motion to dismiss

---

[2] The Public Defendants wrote a two and one-half page memorandum in support of their motion to dismiss, almost one full page of which consists of a large block quote from case law. As exhibits to their motion, the Public Defendants attached 104 pages of documents from proceedings in state court related to the events underlying this case. Rather than providing the Court with a detailed background of these proceedings or a statement of the facts, the Public Defendants made one blanket citation to the entire block of pages, leaving the Court to piece together the background out of whole cloth. The Court would have greatly benefitted from more conscientious briefing and trusts that in the future, should the opportunity present itself, the briefing will be more thorough and complete. That said, because the referenced documents are part of the public record, the Court may and will consider them in ruling on the motion. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (holding that, on a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein.")

(Doc. No. 12) on November 6, 2012, again asserting the actions of the Public Defendants in declaring her property to be a public nuisance were racially motivated. She further states, without elaboration, that she was "coerced" into signing the March 30, 2011 state court entry. (*Id.* at 203.)[3] She also indicates her neighbor, Defendant Walton, keeps raccoons as pets, that these raccoons damaged the property, and that the property "did not get vandalized until [the] Stark County Health Department inspector and the neighbor start[ed] going in and out [of] the home without the Plaintiff's consent." (*Id.* at 204.) On November 13, 2012, Defendant Walton filed a motion to join the Public Defendants' motion to dismiss. (Doc. No. 15.) Reiterating her prior arguments, Plaintiff filed a motion to deny (Doc. No. 17) Ms. Walton's motion.

For the reasons stated below, the Defendants' motions to dismiss are GRANTED, all pending motions are terminated, and this action is DISMISSED.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

---

[3] Despite her unsubstantiated coercion allegation, Ms. Parker does not deny the facts found by the trial court in its March 30, 2011 judgment entry, including that the home was vacant for 10 years.

6

*Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds to his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### III. LAW AND ANALYSIS

"To state a cause of action under § 1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or federal statute by a person acting 'under color of state law.' " *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F.Supp. 2d 833, 841 (6th Cir. 2009). Plaintiff's federal allegations appear to concern violations of her Fourth, Fifth, and Fourteenth Amendment rights.[4]

---

[4] Because the Public Defendants are all divisions of state and local governments rather than the federal government, the Court assumes Plaintiff to be asserting her Fourth and Fifth Amendment rights as they are incorporated through the Due Process Clause of the Fourteenth Amendment. The Court also assumes that Plaintiff intended to bring her federal allegations pursuant to 42 U.S.C. § 1983.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause […] ." U.S. CONST. amend. IV. The Fifth Amendment provides, in pertinent part, that private property shall not "be taken for public use[] without just compensation." U.S. CONST. amend. V.

The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall […] deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation omitted).

## A.        Plaintiff Fails To State A Federal Claim Against The Public Defendants

Ms. Parker's attempts to state a federal claim against the Public Defendants—the Health Department, the Township, and the Commission—fail for two reasons. First, Plaintiff does not allege any facts that could support a claim against the Public Defendants as set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Under *Monell*, a municipality may be liable under § 1983 when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. The threshold for establishing municipal liability is greater than simple respondeat superior; there must be more than merely an employer/employee relationship with the tortfeasor. *Id.* at 692.

8

In her complaint, Ms. Parker makes no factual allegations whatsoever regarding a policy or custom of the Health Department, Township, or Commission that led to a deprivation of her constitutional rights. While Plaintiff does allege that Health Department Inspector Deborah Moore entered the subject property without a warrant and without consent, Ms. Moore is not a party to this action. Plaintiff's claims against the Health Department, at best, rest upon the employer/employee relationship between the Health Department and Ms. Moore, and this is not sufficient under § 1983 to impose liability on the Health Department.[5]

Second, Ms. Parker makes no factual allegations to substantiate her blanket claims of race discrimination against the Public Defendants. The allegations in the complaint as to disparate treatment amount to conclusory and unadorned assertions that are not entitled to the assumption of truth. *Iqbal.* 556 U.S. at 79. Accordingly, Ms. Parker has failed to state a federal claim against the Public Defendants upon which relief can be granted.

**B.      Plaintiff Fails To State A Federal Claim Against The Private Defendants**

On the face of the complaint, it is unclear whether Plaintiff seeks also to assert her federal claims against the Private Defendants—Cottrill Wrecking Company and Helen Walton. It would seem she does not. In any event, the complaint fails to state such a claim. As against the Public Defendants, Plaintiff's allegations under federal law are conclusory and not entitled to the assumption of truth. Additionally, Plaintiff does not plead any factual information, nor argue in her motion, that either of the Private Defendants is a state actor.

---

[5] Because Plaintiff has not pleaded any facts to support a *Monell* claim of any sort against the Public Defendants, the Court does not address the issue of whether the Public Defendants are "persons" under § 1983.

Thus, even construing the complaint liberally in a light most favorable to Ms. Parker, *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008), it does not contain allegations reasonably suggesting she might have a valid federal claim for relief. *See*, *Lillard v. Shelby Cnty Bd. of Educ,*, 76 F.3d 716 (6th Cir. 1996) (court not required to accept summary allegations or unwarranted legal conclusions in determining whether complaint states a claim for relief). The Court must now look to Plaintiff's state law claims.

**C.  Review Of The State Court's Judgment In This Court Is Barred By The *Rooker-Feldman* Doctrine**

To the extent Plaintiff seeks to have this Court "lift" or "stay" the permanent injunction issued by the state court in order to avoid a violation of her constitutional rights, the relief she seeks is impermissible under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine comes from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In a more recent case, the Court held that the doctrine "is confined to […] cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In the present action, Ms. Parker directly attacks the state court's judgment concerning the finding that her property is a public nuisance and issuing a permanent injunction requiring her to abate. Any review of claims related to these findings would require the Court to review the specific issues addressed in the state court proceedings. This Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine to conduct such a review or grant the relief requested.

**D.    The Court Declines To Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims**

Having determined that Plaintiff has failed to properly assert any federal claims, the Court is left only to consider her state law claims. A district court "may decline to exercise supplemental jurisdiction over a claim" if that court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to exercise supplemental jurisdiction depends on "judicial economy, convenience, fairness, and comity [...] ." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). Having determined at an early stage of litigation that all of Plaintiff's federal claims in this action lack merit, the Court finds that this factor, coupled with issues of comity, militates in favor of this Court declining to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, this case is dismissed..

### III.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, all pending motions in this case are terminated, and this action is DISMISSED, without prejudice.

**IT IS SO ORDERED**.

Dated: December 17, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

11